UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>The STATE OF ILLINOIS, ex rel.  )<br>CURTIS ESTRADA, JR.,  )<br>  )<br>  Plaintiffs,  )<br>  )<br>  v.  )<br>  )<br>QUAD CITY PROSTHETIC, INC.,  )<br>an Iowa Corporation, and PROSTHETIC,  )<br>ORTHOTIC SPECIALIST, INC., an  )<br>Illinois Corporation, KENNETH  )<br>FERENCIK, individually, and  )<br>ROSEMARY FERENCIK, individually,  )<br>  )<br>  Defendants.  )  | Case No. 06-4015 |

## ORDER

Now before the Court is Defendants Quad City Prosthetic, Inc.'s ("QCP"), Prosthetic, Orthotic Specialist, Inc.'s ("POS"), Kenneth Ferencik's ("Kenneth"), and Rosemary Ferencik's ("Rosemary") (collectively "Ferenciks") Motion to Strike and Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion [#57] is GRANTED IN PART AND DENIED IN PART.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345, and the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. This Court has supplemental jurisdiction over the claims asserted under Illinois state law pursuant to 28 U.S.C. § 1367, as they are so related to the claims within the Court's federal question jurisdiction that they form part of the same case or controversy.

1

BACKGROUND

The Relator in this case, Curtis Estrada, Jr. ("Estrada"), was employed by the Ferenciks to work for QCP as a Prosthetics and Orthotics Assistant, and to manage QCP's Dixon, Illinois, satellite office in October 2001.[1] The office moved to Freeport, Illinois, in March 2002, and Estrada managed that office, initially evaluated patients, delivered and fitted prosthetics and orthotics to patients, and repaired prosthetics and orthotics for patients. Billing for prosthetics and orthotics services was done under the direction of Rosemary Ferencik at QCP's headquarters in Rock Island, Illinois. Defendants QCP and POS manufacture and fit prosthetics and orthotics for medical patients in eastern Iowa and the northern two-thirds of Illinois. QCP has a principal office in Rock Island, Illinois, and offices in Freeport, Illinois, Peru, Illlinois, and Davenport, Iowa. POS has a principal office in Rock Island, Illinois and other offices in Peoria and Decatur, Illinois. Defendant Kenneth Ferencik has been licensed in the State of Illinois as a Prosthetist and Orthotist since January 29, 2002. He serves as an officer and director of QCP and POS, and has direct management control over all aspects of QCP and POS. Defendant Rosemary Ferencik is Kenneth's wife, and has direct management control over all aspects of QCP and POS.

The United States Department of Health and Human Services ("HHS") administers Medicare Part A, a federally financed health insurance program for persons over age 65 and for disabled persons, and Medicare Part B, supplementary medical insurance. It is Medicare Part B which provides federal government funds to assist in paying for certain prosthetic and orthotic devices given to Medicare beneficiaries, when the devices are medically necessary. *See* 42 U.S.C. § 1395 *et seq*. An eligible individual who enrolls in Part B will obtain benefits in return

---

[1] For purposes of resolving this Motion, the allegations in the Amended Complaint are presumed to be true.

for payment of monthly premiums established by HHS. *See* 42 U.S.C. §§ 1395j, 1395o, 1395r. Those who are participating providers in Medicare may be reimbursed from Medicare Part B for services rendered to beneficiaries of that program. The Centers for Medicare and Medicaid Services contract with private insurers, known as carriers, to process Medicare claims and make the appropriate payments on behalf of the United States. *See* 42 U.S.C. § 1359u. National Government Services, formerly known as AdminaStar Federal, Inc., was the Durable Medical Equipment Regional Carrier for Illinois. A Durable Medical Equipment Regional Carrier pays submitted claims in accordance with various rules and regulations, including the Medicare Rules and Regulations. Those Rules and Regulations are distributed to participating providers.

Medicare pays for prosthetics and orthotics in a lump sum purchase price at a rate equal to 80% of the lesser of the actual charge for the item, or the Medicare allowed purchase price. Medicare pays for the replacement of prosthetic and orthotic devices, or any component parts of those devices, if an ordering physician determines replacement is necessary due to a change in the physiological condition of the patient, an irreparable change in the device, or the required repairs would exceed 60% of the cost to replace the device. 42 U.S.C. § 1395m(h)(1)(G)(I). Medical products and services are assigned billing codes to be used by medical providers and suppliers when billing to Medicare Part B. Claims submitted by providers to Medicare regional carriers must be on a standardized form, HCFA-1500, on which the applicable billing code must be listed.[2] "L Codes" are the billing codes for orthotic and prosthetic devices. National

---

[2] HCFA-1500 forms contain the following Notices:
> Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

Government Services, as regional carrier for Illinois, issued medical policies regarding the L Codes which outlined the medical necessity requirements, documentation requirements, appropriate diagnosis coding, and billing code guidelines.

Illinois' Medicaid program is one which provides medical care and rehabilitative services for persons who receive basic maintenance grants from the State and for other persons unable to meet their essential medical needs because of inadequate resources. *See* 305 ILL. COMP. STAT. 5/5-1 Medicaid funding is shared between the federal government and participating state governments. Claims for reimbursement of medical services under Illinois Medicaid are paid in accordance with the Illinois Public Aid Code and Rules and Regulations promulgated by the Illinois Department of Healthcare and Family Services. Illinois Medicaid provides medical coverage to its recipients for medically necessary prosthetics and orthotics, and for repair services where the device's warranty has not expired and the sum of the individual repair parts and labor does not exceed 75% of the cost of a new item. ILL. ADMIN. CODE tit. 89, 140.475(c) (2011). Coverage for prosthetic and orthotic devices under Illinois Medicaid must be pre-approved, but pre-approval may be waived in specific instances. ILL. ADMIN. CODE tit. 89, §§ 140.475(f), 140.478. Eligible Illinois Medicaid participating providers must submit claims to Illinois Medicaid using the same billing codes as those used for Medicare. The forms for claims submitted electronically include a Billing Certification Form, which requires a provider's signature attesting to the accuracy of the information submitted.

The routine for patients seeking services at QCP or POS was as follows: 1) the patients

---

> Any person who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

came to QCP or POS with a prescription for an evaluation for a prosthetic or orthotic device from their physician; 2) the patient would have an initial evaluation by a prosthetist, orthotist, or other clinical employee to determine the best device to meet the patient's functional needs; 3) the QCP or POS clinical employee would complete an initial evaluation form showing the findings regarding the patient's needs; and 4) if a custom-made orthotic/prosthetic was required, the clinical employee would complete a worksheet for the manufacturing lab with specifications. QCP and POS offered both pre-fabricated and custom-made orthotic devices, and manufactured their own prosthetic devices as well. An office secretary at QCP or POS would then complete a Work In Progress sheet ("WIP"), using the clinical employee's initial evaluation and lab worksheet. Included on the WIP were the L Codes indicating what devices and/or accessories were ordered for the given patient. Office secretaries received billing training from Rosemary Ferencik, Mary Jo Marriott ("Marriott"), the Billing Supervisor for QCP and POS, and Brenna Francisko ("Francisko"), QCP's and POS's Comptroller.

Following return visits by patients for adjustments, if any, and final delivery of the devices, patients were released from care by the clinical employees. Thereafter, the office secretary put together the materials regarding the patient's care that included the doctor's original prescription, clinical employee's initial evaluation, worksheet provided to the manufacturing lab, and WIP. The compiled materials were then sent to Marriott at company headquarters for the appropriate insurance billing. Rosemary Ferencik, Marriott, and/or Francisko, at company headquarters would perform the insurance billing. During the relevant time period in this case, March 1, 1996, to March 20, 2006, the Defendants engaged in upcoding charges, billing for services not rendered, and unbundling charges.

5

When Defendants upcoded charges, they took the information provided to them by QCP's and POS's various satellite offices, but would input L Codes that reflected a device more expensive than the one actually fitted to the patient and documented by those individual satellite offices. The upcoded billing was done by Defendants and employees of QCP and POS at the instruction and consistent with policies created by the Ferenciks. Defendants billed for services not rendered by having secretaries at their various satellite offices reference an L Code list provided to them by Marriott, and then bill specific L Codes to each Medicare patient regardless of whether the patient received the service. The specific L Codes were included on all WIP forms. In other words, the claims submitted to Medicare by QCP and POS reflected services actually rendered by those companies to patients, as well as services not rendered but that appeared on the L Code list provided to the secretaries by Marriott. In one instance, a patient was a no-show, yet Defendants submitted a claim as if services had been rendered to the Medicare patient. Again, the billing for services not rendered was done by Defendants and employees of QCP and POS at the instruction or based on a policy established by the Ferenciks.

As for unbundling charges, L Codes exist for accessories that are components of a piece of a prosthetic or orthotic device. The regional insurance carrier manual for Region B provided that a device supplier could not bill multiple component billing codes if a more inclusive code existed which described the item and components as one. In spite of the manual's instructions, the claims prepared by Defendants reflected L Codes for accessory items for which a more inclusive L Code was available for services actually rendered to Medicare patients. Both the unbundled L Codes, as well as the more inclusive L Codes were listed in claims. During the summer of 2003, Rosemary Ferencik and Estrada had a meeting to discuss the latter's billing

6

concerns. Rosemary indicated to Estrada that there were recent changes to Medicare and so code unbundling was no longer allowed on prefabricated items, but that QCP and POS would continue to bill unbundled L Codes on prefabricated items. So the unbundled billing continued, and was performed by Defendants and employees of QCP and POS at the instruction of or based on a policy established by the Ferenciks.

On March 20, 2006, Relator Estrada filed his *qui tam* Complaint against Defendants. The Complaint remained under seal pending a decision by the United States of America and the State of Illinois as to whether those parties would intervene in the *qui tam* action. The United States of America and the State of Illinois continually sought extensions of time in order to determine whether to intervene in this action over the course of the next four years. On November 17, 2010, the United States and State of Illinois elected to intervene in part and declined to intervene in part. Plaintiffs United States of America and the State of Illinois filed their Amended Complaint on January 18, 2011, alleging violations of the FCA, unjust enrichment, and violations of the Illinois FCA (formerly the Whistleblower Reward and Protection Act). Defendants filed their Motion to Strike and Dismiss, and Plaintiffs filed their Response. This Order follows.

## DISCUSSION

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). This means that (1) the complaint must describe the claim in sufficient detail to give the defendant "fair

7

notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Conclusory allegations are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (citing *Twombly*, 550 U.S. 544 (2007)). The Seventh Circuit has recently explained that it understands the Supreme Court's reasoning in *Twombly* and *Iqbal* to be saying that, "the Plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

In fraud cases, however, the claim must be stated with particularity. FED. R. CIV. P. 9(b). This heightened pleading requirement is satisfied by stating the "who, what, when, where, and how" of the alleged fraud. *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 401 (7th Cir. 2009). The plaintiff must describe the time, place, and content of the circumstances of fraud, and it must identify the parties to the fraud. *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074, 1078 (7th Cir. 1997). Under this rule, state of mind may be pled generally. FED. R. CIV. P. 9(b). While this is a heightened pleading requirement, this standard is a "plausibility standard" and not a "fact pleading" standard. *Swanson*, 614 F.3d at 403.

**I.     Counts I and VI**

Defendants argue that Counts I and VI of Plaintiffs' Amended Complaint should be dismissed because they have not met the heightened pleading requirement of Federal Rule of Civil Procedure 9. At the time the original Complaint was filed, 31 U.S.C. § 3729(a)(1) provided that "any person who knowingly presents, or causes to be presented, to an officer or

8

employee of the United States Government . . . a false or fraudulent claim for payment or approval" would be liable to the United States Government. 31 U.S.C. § 3729(a)(1) (2009).[3] The Illinois FCA provides for the same liability to the State of Illinois under 740 ILCS 175/3(a)(1)(A). 740 ILL. COMP. STAT. 175/3(a)(1)(A) (2011).

Defendants contend that the Amended Complaint refers to a "Relevant Time Period" of March 1, 1996, through March 20, 2006, but other than a few examples of alleged violations within that time period, Plaintiffs do not allege the specific false or fraudulent claims which are the basis of this suit. Defendants further contend that Plaintiffs have not sufficiently pled facts to show that any of the Defendants presented or caused to be presented false or fraudulent claims with the specific intent and purpose to defraud the Government. They argue that at best, Plaintiffs may have alleged some sort of negligence where certain billing policies may have had the effect of causing certain funds to be erroneously obtained from the Government. Plaintiffs counter that Rule 9(b) does not require them to present their entire case, and that as long as a complaint as a whole identifies the specifics of the fraudulent scheme and provides an adequate basis for reasonable inferences that false claims were likely submitted to the Government, that is sufficient. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (stating that it was not "essential for a relator to produce invoices (and accompanying representations) at the outset of the suit" but that it was essential to show a false statement).

As Plaintiffs emphasize, they did in fact provide the "who, what, where, when, and how" of the alleged false or fraudulent claims submitted to the federal and State Governments. Their

---

[3] § 3729 was revised on May 20, 2009, when Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"). The revision was not made retroactive by Congress, and so FERA is not applicable to the billings in this case.

allegations include specific reference to the Ferenciks, Marriott, and Francisko; their allegations include that Defendants submitted false claims to Medicare and Medicaid; there are allegations that the submission of claims occurred in Rock Island, Illinois, and other specifically identified locations; there are allegations that these fraudulent actions occurred between March 1, 1996, and March 20, 2006, and that Defendants committed the violations by upcoding, billing for services not actually rendered, and unbundled billing. To the extent that Defendants argue that the Plaintiffs do not allege specific false or fraudulent claims other than a few "examples," they proceed as if Defendants must engage in fact pleading.

Also, the case of *United States ex rel. Garst v. Lockheed*, cited by Defendants in support of their position, is distinguishable. In *Garst*, the relator's complaint failed where he did not allege specific false or fraudulent claims or records, and where his allegations where general. 158 F. Supp. 2d 816, 820-21 (N.D. Ill. 2001). Here, in contrast, Plaintiffs have included allegations specifically detailing the ways in which Defendants engaged in upcoding charges, billing for services not rendered, and unbundling charges, and then went further to provide specific dates. The Court will not, therefore, dismiss Plaintiffs' Amended Complaint for failure to meet the heightened pleading requirement of Rule 9(b).

Plaintiffs dispute the Defendants' position that Plaintiffs have not sufficiently pled facts to show that any of the Defendants presented or caused to be presented false or fraudulent claims with the specific intent and purpose to defraud the Government. Plaintiffs concede that they have not pled that Defendants had the specific intent to defraud the Government, but state that such an omission is irrelevant. Plaintiffs cite to the FCA's definition of the mental state necessary for violations of the Act, which provided in 2009:

10

> For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--
> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
> (3) acts in reckless disregard of the truth or falsity of the information,
> and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(b). Plaintiffs state that the Government's Amended Complaint sets forth numerous facts in each section indicating that Medicare and Medicaid claims were falsified by Defendants to reflect more expensive services were performed, falsified to be paid for services not actually rendered, and falsified to receive multiple payments for services that should have been included in a single payment from Medicare.

Assuming the allegations of the Amended Complaint to be true, the Court finds that Plaintiffs have sufficiently alleged that Defendants knowingly presented or caused to be presented false claims under 31 U.S.C. § 3729(a)(1) and 740 ILCS 175/3(a)(1)(A). Defendants unpersuasively argue that Plaintiffs' allegations, "at best," allege negligence regarding the submission of claims to Medicare and Medicaid. Plaintiffs' allegations detail the way in which L Codes were manipulated, listed, and submitted to Medicare and Medicaid. The allegations include that Rosemary Ferencik, Marriott, and/or Francisko performed the insurance billing, that they had QCP and POS employees input L Codes improperly pursuant to instructions and policies created by the Ferenciks, and that Rosemary Ferencik discussed changes in Medicare billing with Estrada but continued to bill in a way contrary to the Medicare changes. To the extent that the allegations go on to state that the altered claims were then submitted to Medicare and Medicaid, Plaintiffs have sufficiently pled that Defendants' purpose and intent was to defraud the Government. The allegations here do not suffer from the lack of specificity and detail found to require dismissal of the plaintiff's complaint in *Raghavendra v. Trs. of Columbia*

*Univ.*, 2008 U.S.Dist. LEXIS 51995, at *30 (S.D.N.Y. 2008) ("It is simply not the law . . . that any disgruntled employee who works for an entity receiving federal dollars can adequately plead an FCA claim by stating that the employer accepted federal dollars and treated its workers unfairly"). *United States ex rel. Rueter v. Sparks* does not compel this Court to conclude otherwise where the procedural posture of that case was not at the motion to dismiss stage, but rather following a bench trial and upon the defendants' motion for directed verdict. 939 F. Supp. 636, 637-39 (C.D. Ill. 1996). Accordingly, Defendants' Motion to Dismiss Counts I and VI is denied.

## II.     Counts II, III, IV, VII, VIII, and IX

Plaintiffs have brought claims pursuant to 31 U.S.C. § 3729(a)(2) and 740 ILCS 175/3(a)(1)(B), which provide for the liability of any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by" the United States or State of Illinois 31 U.S.C. § 3729(a)(2)(2009); 740 ILL. COMP. STAT. 175/3(a)(1)(B) (2011). Plaintiffs' claims brought pursuant to 31 U.S.C. § 3729(a)(3) and 740 ILCS 175/3(a)(1)(C)) provide that any person who conspires to defraud the United States or State of Illinois "by getting a false or fraudulent claim allowed or paid" is subject to liability. 31 U.S.C. § 3729(a)(2) (2009); 740 ILL. COMP. STAT. 175/3(A)(1)(C) (2011). Finally, § 3729(a)(7) and, similarly, 740 ILCS 175/3(a)(1)(G) provide that "any person who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property" to the United States or State of Illinois is subject to liability. 31 U.S.C. § 3729(a)(7) (2009); 740 ILL. COMP. STAT. 175/3(a)(1)(G) (2011). In their Motion to Dismiss, Defendants argue that Plaintiffs claims brought pursuant to §

3729(a)(2), (a)(3), (A)(7), and 740 ILCS 175/3(a)(2), (a)(3), and (a)(7) should be dismissed because they suffer from the same defects which compel dismissal of Plaintiffs' Counts I and VI - failure to properly allege that the Defendants specifically intended to defraud the Government.

Defendants rely upon *Allison Engine Co. v. United States ex rel. Sanders*. 553 U.S. 662 (2008). In that case, the Supreme Court addressed the question of what a plaintiff asserting a claim under § 3729(a)(2) and (a)(3) of the FCA must show in order to succeed upon the claim. *Id.* at 665. The Court held that under § 3729(a)(2), the plaintiff must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim. *Id.* Under § 3729(a)(3), the plaintiff must similarly show that the conspirators agreed to make use of the false record or statement in order to have the Government decide to pay or approve the false claim. *Id.* A plaintiff cannot succeed under those provisions of the FCA where a defendant has made a false statement to a private entity and does not intend that the Government rely on that false statement as a condition of payment. *Id.* at 671-72. Here, Defendants argue that *Allison Engine* compels the dismissal of Plaintiffs' claims where they have only generally alleged that Defendants submitted inaccurate codes as a result of implementing certain billing policies and that such implementation resulted in payment from the Government. Plaintiffs counter that Defendants have ignored the actual statute, and seem to misinterpret the Supreme Court's *Allison Engine* decision. Plaintiffs further argue that, as *Allison Engine* provided, a defendant is liable under the FCA for the "natural, ordinary and reasonable consequences of his conduct," and so Defendants are liable for the submission of their claims to Medicare and Medicaid. *Id.* at 672.

As the Court determined previously, Plaintiffs have sufficiently pled that Defendants'

13

purpose and intent was to defraud the Government.  The allegations of the Amended Complaint are not merely general allegations that the Defendants submitted certain inaccurate codes as a result of implementing certain billing policies which resulted in payment by the Government.  Instead, the allegations detail the ways in which L Codes were affirmatively manipulated and listed.  Further, the allegations plausibly suggest that the fraudulent policies were specifically created so that claims would be submitted in a way to maximize the Government's payment of the claims to QCP and POS.  At the very least, the allegations plausibly suggest that Defendants intended their submitted claims to be material to the decision to pay or approve the allegedly false claims.  *Allison Engine*, 553 U.S. at 665.  Indeed, a defendant is answerable for the natural, ordinary, and reasonable consequences of his conduct.  *Id.* at 672.  Accordingly, Defendants' Motion to Dismiss Counts II, III, IV, VII, VIII, and IX is denied.

To the extent that Defendants seek dismissal of Plaintiffs' conspiracy counts, III and VIII, they have failed to adequately develop that argument at this stage of the proceedings.  Furthermore, as Defendants argue, the question of whether the intracorporate conspiracy doctrine precludes a finding of conspiracy here requires a more fully developed factual record.  *See Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) (citing *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565 (Ill. 1998)) (explaining that under Illinois' intracorporate conspiracy doctrine, there can be no civil conspiracy between a corporation's own officers or employees).  Thus, the Court denies Defendants' Motion to Dismiss the conspiracy counts to the extent they rely upon the intracorporate conspiracy doctrine in seeking dismissal.

**III.     Counts V and X**

Because the Court has denied Defendants' Motion to Dismiss Plaintiffs' FCA counts for failure to state claims, the Court will not dismiss Plaintiffs' unjust enrichment counts, V and X. Defendants argue that at least one of those counts should be dismissed as duplicative and unnecessary. However, Count V is based upon the alleged violations of the FCA and Count X is based upon the alleged violations of the Illinois FCA. Given that those counts involve different statutory provisions and different Plaintiffs, the Court will not dismiss those counts as duplicative and unnecessary.

**IV.     Statute of Limitations**

Defendants argue that the Court should strike with prejudice all allegations from the "Relevant Time Period" of March 1, 1996, to March 20, 2006, that are time-barred. 31 U.S.C. § 3731(b) provides:

> A civil action under section 3730 may not be brought--
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b) (2009). Defendants state that the United States' FCA counts are subject to the six-year statute of limitations under 31 U.S.C. § 3731(b)(1), and its unjust enrichment claim is subject to a six-year statute of limitations under 28 U.S.C. § 2415. Defendants state that the State of Illinois' Illinois FCA and unjust enrichment claims are subject to a five-year statute of limitations under 735 ILCS 5/13-205.

Defendants argue that all FCA claims which predate March 20, 2000, the United States' unjust enrichment claims predating March 20, 2000, the Illinois FCA counts and State of Illinois' unjust enrichment claims which predate March 20, 2001, should be stricken with prejudice. Plaintiffs agree that some of their claims should be dismissed as time-barred. They contend, however, that the FCA counts should be limited to claims occurring on or after March 20, 1996, the United States' unjust enrichment count should be limited to claims occurring on or after December 1, 1997, the Illinois FCA claims which occurred prior to December 1998 should be dismissed, and the State of Illinois' unjust enrichment claims that occurred prior to December 1998 should also be dismissed.

In regard to the federal FCA claims, Plaintiffs contend that § 3731(b)(2) applies rather than § 3731(b)(1)'s six-year period of limitation. They correctly state that the Seventh Circuit has not decided the appropriate application of § 3731(b) to *qui tam* cases in which the government intervenes. They posit that the logical application would provide that where the Government intervenes in a Relator's *qui tam*, the statute accrues on the date the Relator learned the facts material to the right of action. Defendants cite to *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, in which the D.C. Circuit court held that "in *qui tam* actions where the United States does not intervene, the same statute of limitations applies as would apply in any other [FCA] case." 474 F. Supp. 2d 75, 89 (D.D.C. 2007); *see also United States ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 849 (E.D. Va. 2010) (explaining that the FCA's "statute of limitations provision permits extension of the six-year statute of limitations up to ten years if the government files its complaint within three years of the date on which the relevant material facts are known or should have been known by the responsible official")*; but*

16

*see In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 358 (D. Conn. 2004) (applying § 3731(b)(2) to determine whether the government's complaint-in-intervention was timely filed where original complaint was brought by relator). Given the absence of Seventh Circuit precedent on this issue, and the fact that Defendants have not addressed whether § 3731(b)(2) would be applicable here, the Court finds that it would be improper to grant Defendants' Motion to Strike federal FCA claims which it believes to be time-barred under § 3731(b)(1).

Furthermore, except for the claims prior to March 20, 1996, Plaintiffs have not included facts that show their Amended Complaint's tardiness against Defendants. If a federal complaint includes facts that sufficiently show the complaint's tardiness, the complaint may be dismissed on statute of limitations grounds raised in a Rule 12(b)(6) motion. *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (stating that "dismissal under 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense"); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) (explaining that dismissal at the pleading stage is unusual but may be appropriate when the plaintiff pleads himself out of court where he alleges facts that sufficiently establish the complaint's tardiness). Under no circumstances would Plaintiffs' FCA claims prior to March 20, 1996, be timely, and Plaintiffs acknowledge that fact. Therefore, Plaintiffs' FCA claims prior to March 20, 1996, are stricken with prejudice from the Amended Complaint, but their FCA claims will otherwise not be dismissed on statute of limitations grounds.

28 U.S.C. § 2415 provides that an action must be brought within six years from the time the action accrued. 28 U.S.C. § 2415 (2011). Plaintiffs argue, without citing to any authority,

17

that their unjust enrichment claims accrued on the date the Relator learned of the material facts underlying their FCA claims. Plaintiffs state that the Relator learned of the FCA claims sometime in late 2003. Thus, say Plaintiffs, all claims for unjust enrichment that occurred prior to December 1997 should be dismissed. Plaintiffs are mistaken. The six-year limitations period runs for the United States, as the statute says, from the date "the right of action accrues." *Id.* 28 U.S.C. § 2416(c) provides that the time during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances" is excluded from the six-year period identified in § 2415. 28 U.S.C. § 2416(c) (2011). If anything, the six-year limitations period extended forward, not backward, from December 2003, the time at which the Relator allegedly learned of the facts underlying his FCA claims. The Relator filed his original Complaint on March 20, 2006. The parties do not disagree that the United States' Amended Complaint relates back to the date of the Relator's filing of the original *qui tam* Complaint. 31 U.S.C. § 3731(c) (providing that for statute of limitations purposes, any Government pleading shall relate back to the filing date of the complaint by the person who originally brought the action). The United States has now brought claims of unjust enrichment in its Amended Complaint. Under § 2415, the United States had within six years from the date on which its claims of unjust enrichment accrued to file suit. Accordingly, any claims by the United States for unjust enrichment that predate March 20, 2000, are untimely under § 2415 and are therefore stricken from the Amended Complaint with prejudice.

Plaintiffs are again mistaken in arguing that their Illinois FCA claims and unjust enrichment claim against the State of Illinois are timely to the extent they occurred after

December 1998. As explained above, if anything, the five-year limitations period extended forward, not backward, from December 2003, the time at which the Relator allegedly learned of the facts underlying his Illinois FCA and unjust enrichment claims. The filing of the State of Illinois' Amended Complaint relates back to March 20, 2006, the date on which the Relator filed his *qui tam* Complaint. Under 735 ILCS 5/13-205, the State of Illinois had five years to bring suit claiming violations of the Illinois FCA and unjust enrichment. Accordingly, any claims by the State of Illinois for violations of the Illinois FCA and unjust enrichment that predate March 20, 2001, are untimely under 735 ILCS 5/13-205, and are therefore stricken from the Amended Complaint with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike and Dismiss [#57] is GRANTED IN PART AND DENIED IN PART. Defendants' Motion is granted to the extent that Plaintiffs' federal FCA claims prior to March 20, 1996 are STRICKEN WITH PREJUDICE, to the extent that their federal unjust enrichment claims that predate March 20, 2000, are STRICKEN WITH PREJUDICE, and to the extent that Plaintiffs' Illinois FCA claims and Illinois unjust enrichment claims that predate March 20, 2001, are STRICKEN WITH PREJUDICE. Defendants' Motion to Dismiss is otherwise DENIED. This matter is referred to the Magistrate Judge for further proceedings.

ENTERED this  1st  day of August, 2011.

                                                             s/ Michael M. Mihm  
                                                             Michael M. Mihm  
                                                             United States District Judge